2011 WY 131

**Kimberly SHAFFER, Appellant (Plaintiff),**

v.

**WINHEALTH PARTNERS, Appellee (Defendant).**

**No. S–11–0005.**

Supreme Court of Wyoming.

Sept. 20, 2011.

---

Representing Appellant: Blair J. Trautwein of Wick & Trautwein, LLC, Fort Collins, CO.

Representing Appellee: Michael Rosenthal and Lucas Buckley of Hathaway & Kunz, P.C., Cheyenne, WY. Argument by Mr. Rosenthal.

Before KITE, C.J., and GOLDEN, HILL, VOIGT, and BURKE, JJ.

HILL, Justice.

[¶ 1] Appellant, Kimberly Shaffer (Shaffer), challenges an order of the district court granting summary judgment in favor of the Appellee, WINhealth Partners (WIN). Shaffer contends that there are ambiguities in the insurance contract which the district court interpreted incorrectly as a matter of law, and that there are genuine issues of material fact with respect to terminology used in the insurance contract that governs in this case. We will reverse the district court's order granting summary judgment in favor of WIN, direct the entry of a partial summary judgment in favor of Shaffer on her claims for benefits, and remand this matter to the district court for further proceedings so as to address Shaffer's other claims, including "bad faith" and attorney's fees.

## ISSUES

[¶ 2] Shaffer raises these issues:

**A. Did the trial court improperly grant summary judgment on all issues in favor of [WIN]?**

1. Is Article VI, Part II, (Exclusions and Limitations) subpart 45 ambiguous as to whether it applies only to cosmetic breast reduction surgeries or all breast reduction surgeries?

2. Does the term "reduction mammoplasty" have a single plain meaning or two plain meanings?

3. Did the trial court err in considering the affidavit of Dr. Wyatt as it is parol evidence in determining the meaning of subpart 45?

4. Did the trial court err in finding Dr. Wyatt's affidavit was not disputed by competent evidence?

5. Did the trial court err in failing to consider other parts of the WINhealth contract when determining that subpart 45 (reduction mammoplasty) was an exclusion applying to all breast reduction surgeries rather than a limitation applying only to cosmetic surgeries?

**B. Did the trial court err in failing to grant partial summary judgment on the contract issues in favor of Shaffer?**

1. Did the trial court err in finding Article VI, Part II (Exclusions and Limitations) subpart 28 dealing with complications of operations excluded by the WIN health policy applies and denies coverage for Shaffer's penicillin-resistant MRSA infection?

2. Did the court err in failing to consider the differences in language between subparts 8 and 28 in interpreting subpart 28?

3. Does subpart 8 provide a basis to deny a medically necessary surgery?

WIN restates the issues as follows:

1. The district court's grant of summary judgment was appropriate as no material issue of fact exists as to the definition of a "reduction mammoplasty" and a judgment was appropriate as a matter of law.

2. [Shaffer] was not entitled to a summary judgment.

## FACTS AND PROCEEDINGS

[¶ 3] In her complaint, Shaffer alleged that on August 17, 2005, her primary care physician, James G. Haller, M.D. (Dr. Haller), examined her regarding ongoing shoulder pain and back pain, as well as a recurring interiginous rash beneath her breasts. Dr. Haller referred Shaffer to William J. Wyatt, M.D. (Dr. Wyatt) for further treatment. Shaffer then consulted with Dr. Wyatt on September 8, 2005, and he advised her that her "symptoms could be improved upon greatly by a Bilateral Breast Reduction Mammoplasty." On October 18, 2005, Shaffer consulted with Jeffery K. Chapman, M.D., (Dr. Chapman) regarding her symptoms. He observed bruising on Shaffer's shoulders from her bra straps and a rash beneath her breasts. Shaffer also advised Dr. Chapman of her ongoing low back pain. Dr. Chapman advised her that breast reduction surgery is very much medically indicated to control the symptoms described above.

[¶ 4] Shaffer had health care coverage through her husband's employment with the City of Cheyenne. Shaffer provided her medical records to that health care insurer, Great West Healthcare, and breast reduction surgery was authorized upon its determination that the surgery was medically necessary. The surgery was accomplished in late December of 2005.

[¶ 5] At the turn of the year 2006 (i.e., January 1, 2006), the health care insurer for the City of Cheyenne changed from Great West to WIN. On or about January 2, 2006, Shaffer noticed redness and swelling around the areas affected by the surgery, and she immediately sought medical attention. She was hospitalized for an MRSA (Methicillin-resistant Staphylococcus aureus) infection and was treated aggressively as that condition is life threatening. MRSA is frequently contracted during surgery and in hospitals and is then described more accurately as health-care associated MRSA (see http://www.mayoclinic.com/health/mrsa/DS00735).

[¶ 6] Shaffer presented the bills for the treatment she received in early 2006 to WIN and her claims were denied, in part on the basis that the treatment she received for her MRSA infection arose from treatment to improve appearance. Shaffer went through three levels of appeal with WIN but was not successful in getting WIN to change its original decision.

[¶ 7] On January 2, 2009, Shaffer filed a complaint alleging that because of WIN's actions/omissions, she suffered economic damages, pain, suffering, and emotional damages. She alleged breach of contract, bad faith breach of contract, and she asked for attorney's fees and prejudgment interest. The parties filed cross motions for summary judgment regarding the interpretation of the insurance contract. They submitted sections of the insurance contract, which is entitled "Medical Benefit Plan Information and Evidence of Coverage" (EOC), as part of the summary judgment materials.

[¶ 8] The district court reviewed the insurance contract and concluded that the language clearly and unambiguously excluded coverage for Shaffer's breast reduction surgery. Because the contract also excluded coverage for treatment of complications arising from non-covered services, the district court concluded that Shaffer was not entitled to benefits for treatment of her MRSA infec-

tion. Consequently, it granted summary judgment in favor of WIN. Shaffer appealed.

## STANDARD OF REVIEW

[¶ 9] We will affirm a summary judgment provided there is no genuine issue of material fact and the law clearly entitles the moving party to prevail. An insurance policy constitutes a contract between insurer and insureds. When the parties have stipulated to all material facts, summary judgment is proper if such an insurance contract is found to be unambiguous. *Aaron v. State Farm Mut. Auto. Ins. Co.,* 2001 WY 112, ¶ 8, 34 P.3d 929, 931 (Wyo.2001) (internal citations omitted).

[¶ 10] In addition,

It is well established through this court's precedent that general principles of construction will be followed when interpreting conditions of an insurance agreement. Basic tenets stated in *McKay v. Equitable Life Assurance Society of the United States,* 421 P.2d 166, 168 (Wyo.1966), and applied in controversies involving insurance policies in the state of Wyoming are:

1. "[T]he words used will be given their common and ordinary meaning.... Neither will the language be 'tortured' in order to create an ambiguity."

2. "The intention of the parties is the primary consideration and is to be ascertained, if possible, from the language employed in the policy, viewed in the light of what the parties must reasonably have intended."

3. "Such [insurance policy] contracts should not be so strictly construed as to thwart the general object of the insurance.... [T]he parties have the right to employ whatever lawful terms they wish and courts will not rewrite them."

4. "Absent ambiguity, there is no room for construction and the policy will be enforced according to its terms."

5. "[W]here such [insurance policy] contracts are so drawn as to be ambiguous and uncertain and to require construction, the contract will be construed liberally in favor of the insured and strictly against the insurer. Also, if the contract is fairly susceptible of two constructions, the one favorable to the insured will be adopted."

*Commercial Union [Ins. Co. v. Stamper,* 732 P.2d 534] at 539 [ (1987) ] (citations omitted); see also *State ex rel. Farmers Ins. Exch. v. District Court of Ninth Jud. Dist.,* 844 P.2d 1099, 1101 (Wyo.1993).

*Aaron,* ¶ 15, 34 P.3d at 933; and see *Mena v. Safeco Ins. Co.,* 412 F.3d 1159, 1163 (10th Cir.2005).

## DISCUSSION

[¶ 11] Several provisions of the insurance contract were provided with the parties' summary judgment submissions. Section 5.2.A states in relevant part:

**2. OVERVIEW OF DIRECT BENEFITS**

A. Members are entitled to receive Covered Services specified in Section 6 if ALL of the following requirements are satisfied:

1) The Covered Services are medically necessary;

. . . .

6) No Exclusion or limitation applies to the Covered Services.

[¶ 12] Section 6 of the EOC is entitled "Covered Services" and includes the "Description of Plan Benefits" in Section 6.I and the "Benefit Plan Exclusions and Limitations" in Section 6.II. The parties point to the following provisions in Section 6.I as being relevant:

I. DESCRIPTION OF PLAN BENEFITS

. . . .

23. *RECONSTRUCTIVE SURGERY.*

. . . .

*Not Covered:*

Cosmetic Surgery—any surgical procedure (or any portion of a procedure) performed primarily to improve physical appearance through change in bodily form, except repair of accidental injury.

● Penile prosthesis (any type)

● Breast reduction surgery [1]

The referenced portions of Section 6.II state:

II. BENEFIT PLAN EXCLUSIONS AND LIMITATIONS:

The following services are not covered or are subject to limitations:

. . . .

8. For the correction of, or complications arising from, treatment or an operation to improve appearance if the original treatment or operation either was not a covered expense under this plan of benefits or would not have been covered if the patient had been insured.

. . . .

28. For complications or side effects arising from services, procedures, or treatments excluded by this policy.

. . . .

45. Reduction Mammoplasty.

WIN's motion for summary judgment also included an affidavit from William J. Wyatt, M.D. Dr. Wyatt attests to the fact that in his area of specialty (plastic surgery), there is no difference between "breast reduction," "reduction mammoplasty," or "reduction mammaplasty."

[¶ 13] The district court's decision letter summarized its interpretation of the EOC as follows:

1. The WINhealth policy generally covers services that are medically necessary and listed in *Article 6, Part I.*

2. *Article 6, Part II, Subpart 45* imposes a blanket exclusion of coverage for reduction mammoplasty, a term which is synonymous with breast reduction surgery. . . .

3. *Article 6, Part II, Subpart 28* excludes from coverage complication and side effects which result from surgeries not covered by the policy. Because breast reduction surgery is an excluded surgery, WINhealth is not obligated to provide benefits for treatment of Shaffer's resulting "MRSA" infection. It makes no difference that Shaffer was

insured prior to the infection by a different carrier who covered the underlying procedure.

[¶ 14] It is undisputed that Shaffer's breast reduction surgery was medically necessary and was not performed for cosmetic purposes. It is likewise clear that the MRSA infection was a complication of her breast reduction surgery. Section 6.II, ¶ 28, excludes from coverage complications and side effects resulting from surgeries not covered by the policy. We start, then, with a determination of whether Shaffer's breast reduction surgery was covered by WIN's policy. The parties disagree as to whether Shaffer's non-cosmetic breast reduction surgery falls within the definition of reduction mammoplasty referred to in 6.II, ¶ 45. WIN claims the term refers to all breast reduction surgeries, while Shaffer argues that it only applies to cosmetic breast reductions.

[¶ 15] In accordance with our contract interpretation principles, we begin with the plain language of the contract. The term "reduction mammoplasty" is not defined in the insurance contract. We, therefore, apply the ordinary and common meaning of the term. See, e.g., *Aaron,* ¶ 15, 34 P.3d at 933. 4A *Lawyer's Medical Cyclopedia,* § 31.26 (6th ed. 2011) describes reduction mammoplasty as:

Reduction mammaplasty is occasionally performed for purely cosmetic purposes. More often, women seek surgical relief from the discomfort caused by massive, heavy, pendulous breasts. The female breast can become large enough to restrict physical activity, interfere with breathing, prevent sleep, and cause constant pain. Operations to relieve such distress are certainly not purely cosmetic surgery. Sagging of the breast tissue (ptosis) tends to occur naturally with age. Ptosis occurs because a large breast is a heavy organ. The gland is somewhat loosely attached to the anterior chest wall, and with aging, these attachments stretch and loosen. The skin envelope that covers the breast is also distensible and will gradually stretch un-

---

1. It is not clear if ¶ 23 has additional provisions, as the page ends with the bulleted reference to "Breast Reduction Surgery" and the following page of the insurance contract is not included in the record.

der the constant weight of the sagging, heavy gland.

This description of reduction mammoplasty confirms that the term is synonymous with breast reduction surgery and applies whether the procedure is performed for cosmetic or non-cosmetic purposes. The definition is also consistent with Dr. Wyatt's testimony that in his specialty of plastic surgery, there is no difference between "breast reduction," "reduction mammoplasty," or "reduction mammaplasty." [2]

[¶ 16] Applying the ordinary and common meaning of the words used in the insurance contract, we conclude that Shaffer's breast reduction surgery fell within the definition of "reduction mammoplasty." Consequently, if Section 6, Part II simply stated that mammoplasty reduction was "excluded," we would agree with the district court that all breast reductions are excluded from coverage under the policy. However, the contractual language states that reduction mammoplasty is either "not covered or *subject to limitations*," without specifying which of those alternatives applies. The district court did not consider the effect of the "subject to limitations" language.

■ [¶ 17] Our rules of contract interpretation require us to give effect to each word if possible, and we "strive to avoid construing a contract so as to render one of its provisions meaningless, because each provision is presumed to have a purpose." *Scherer v. Laramie Reg'l Airport Bd.*, 2010 WY 105, ¶ 11, 236 P.3d 996, 1003 (Wyo.2010) (citing *Wyoming Game & Fish Comm'n v. Mills Co.*, 701 P.2d 819, 822 (Wyo.1985)). Thus, we cannot ignore the contractual language that states that coverage for reduction mammoplasty may be subject to limitations, as opposed to excluded altogether.

[¶ 18] Looking at the contract as a whole, we note that Section 6.I, ¶ 23, excludes coverage for cosmetic procedures and specifically refers to breast reductions. This would seem to be a limitation on coverage of reduction mammoplasty as contemplated by Section 6.II, ¶ 45. However, WIN argues that ¶ 23 should not be considered when interpreting Section 6.II's "subject to limitations" language because that language only pertains to limitations specifically stated within Section 6.II. The problem with WIN's argument is Section 6.II. does not state that the "subject to limitations" language is restricted to limitations set out in that section. Looking at the contract as whole, it makes no sense to disregard the limitations set out in Section 6.I., when interpreting the "subject to limitations" language in Section 6.II.

[¶ 19] If, as WIN advocates (and the district court decided), Section 6.II, ¶ 45, is meant to exclude all reduction mammoplasty (whether cosmetic or not), then it would not be necessary to include the specific exclusion of cosmetic breast reductions in Section 6.I, ¶ 23. The district court's interpretation renders that part of ¶ 23 meaningless, in violation of our rules of contract interpretation. *Scherer*, ¶ 11, 236 P.3d at 1003. The only interpretation which gives effect to both §§ 6.I, ¶ 23, and 6.II, ¶ 45, is that coverage for reduction mammoplasty is not wholly excluded but, rather, coverage is limited to non-cosmetic breast reduction surgeries.

■ [¶ 20] Furthermore, even if we were to find an ambiguity in the contract language, our precedent would require a ruling in favor of Shaffer. Where insurance contracts are drawn so as to be ambiguous and uncertain and require construction, the contract will be construed liberally in favor of the insured and strictly against the insurer. Consequently, if the contract is fairly susceptible of two constructions, the one favorable to the insured will be adopted. *Aaron*, ¶ 15, 34 P.3d at 933.

## CONCLUSION

[¶ 21] We hold that the district court erred in granting summary judgment to

---

2. Shaffer argues that the district court erred by considering extrinsic evidence in the form of Dr. Wyatt's testimony defining the medical terms. In addition, she argues that if it was appropriate to consider Dr. Wyatt's testimony, then the district court also should have considered her testimony as to her understanding of the meaning of the terms. We do not need to address this issue because we accept Dr. Wyatt's definition but conclude, in any event, that the insurance contract covers Shaffer's breast reduction surgery.

WIN. Indeed, we conclude that based upon the evidence in the record, much of it submitted by WIN, Shaffer is entitled to summary judgment on her claims for the treatment of her MRSA infection. Our ruling on this issue is dispositive, so we do not need to address the parties' other arguments. The bad faith claim remains as an issue to be resolved.[3]

[¶ 22] The district court's summary judgment order is reversed, and we direct that the district court enter summary judgment in favor of Shaffer on her claims for treatment of her MRSA infection. In addition, we remand this matter to the district court for further proceedings to dispose of all other remaining issues/claims.

HILL, J., delivers the opinion of the Court; GOLDEN, J. files a dissenting opinion in which VOIGT., J. joins; and VOIGT, J., files a dissenting opinion, in which GOLDEN, J., joins.

GOLDEN, Justice, dissenting, in which VOIGT, Justice, joins.

[¶ 23] I join Justice Voigt's dissenting opinion and write separately to record a few additional thoughts about resolution of this appeal.

[¶ 24] In my study of the issues in this appeal, I have come across a substantial body of interesting, scholarly literature on the subject of the readability of insurance contracts, including health insurance contracts, similar to the one in this case. In that literature there appears to be broad agreement among those law professors, treatise authors, and commentators active in this area of the law that health insurance contracts are contracts of adhesion. As one commentator states it:

Health insurance contracts have historically been recognized as contracts of adhesion. As such, the terms of health insurance contracts are never fully discussed between the parties. In the case of individual market health insurance policies, the contract is always "off the rack." It is sold "as is" with no negotiation. **In the case of group-based health insurance policies, the kind of health insurance an employee might obtain from her employer, for example, the ability to meaningfully negotiate terms is negligible. While there may appear to be some room for negotiation by the employer (the entity actually purchasing the insurance)** and some variability as to terms (e.g., cost-sharing components, such as co-payments and deductibles, and network requirements), **in reality, there is no opportunity for significant bargaining as to standard terms.** Thus, regardless of the source of one's health insurance, there is severely limited opportunity for negotiation as to the standard terms of the health insurance contract.

John Aloysius Cogan, Jr., *Readability, Contracts of Recurring Use, and the Problem of Ex Post Judicial Governance of Health Insurance Policies*, 15 Roger Williams U.L.Rev. 93, 101 (2010) (emphasis added). Appellee's health insurance policy is such a group-based policy.

[¶ 25] An initial question for me in my study of the issues in this appeal was whether the Court's interpretation of this adhesive health insurance policy is a question of law or a question of fact. It is clear that the interpretation of an ordinary, arms-length negotiated contract is a fact question concerning the parties' intent (think "meeting of the minds"/mutual assent). I would not use that standard here; rather, I'm inclined to accept the thesis that the interpretation of this adhesive health insurance contract is a legal question. *See* Hon. Randall H. Warner, *All Mixed Up About Contract: When Is Contract Interpretation a Legal Question and When Is It a Fact Question*, 5 Virginia L. & Bus. Rev. 81, 84 (2010). I would treat the interpretation of this health insurance policy in the same way the Court treats the interpretation of a statute as a question of law. *Id.* at 93. About our interpretation of statutes, we have said:

---

**3.** Both parties discuss in their briefs the facts surrounding WIN's various notifications to Shaffer that it would not cover her breast reduction surgery and her actual knowledge of WIN's position on the matter. These facts do not have any bearing on our interpretation of the contractual language. They may, however, be relevant in future proceedings on Shaffer's bad faith claim.

In interpreting statutes, our primary consideration is to determine the legislature's intent. All statutes must be construed *in pari materia* and, in ascertaining the meaning of a given law, all statutes relating to the same subject or having the same general purpose must be considered and construed in harmony. Statutory construction is a question of law, so our standard of review is de novo. We endeavor to interpret statutes in accordance with the legislature's intent. We begin by making an inquiry respecting the ordinary and obvious meaning of the words employed according to their arrangement and connection. We construe the statute as a whole, giving effect to every word, clause, and sentence, and we construe all parts of the statute *in pari materia*. When a statute is sufficiently clear and unambiguous, we give effect to the plain and ordinary meaning of the words and do not resort to the rules of statutory construction. Moreover, we must not give a statute a meaning that will nullify its operation if it is susceptible of another interpretation.

Moreover, we will not enlarge, stretch, expand, or extend a statute to matters that do not fall within its express provisions. Only if we determine the language of a statute is ambiguous will we proceed to the next step, which involves applying general principles of statutory construction to the language of the statute in order to construe any ambiguous language to accurately reflect the intent of the legislature. If this Court determines that the language of the statute is not ambiguous, there is no room for further construction. We will apply the language of the statute using its ordinary and obvious meaning.

*Ball v. State ex rel. Workers' Safety & Comp. Div.*, 2010 WY 128, ¶ 29, 239 P.3d 621, 629–30 (Wyo.2010) (internal citations omitted).

[¶ 26] In this health insurance coverage dispute, we are asked whether the contract covers medical services for treating complications arising from a medically necessary reduction mammoplasty. I agree with the majority that the term "reduction mammoplasty" is synonymous with the term "breast reduction surgery" as these terms appear in this contract. From this point forward, I will use the term "reduction mammoplasty" for simplicity sake.

[¶ 27] I think all agree that the contract does not include cosmetic reduction mammoplasty as a covered service: Section 6, Part I (Covered Services—Description of Plan Benefits), Paragraph 23, Reconstructive Surgery, Not Covered: Cosmetic surgery—Reduction mammoplasty. I think all agree that the contract does not include medical services for complications arising from services excluded by the contract: Section 6, Part II (Covered Services—Benefit Plan Exclusions and Limitations), Paragraph 28. In light of the above provisions, I think all agree that the contract does not include medical services for complications arising from cosmetic reduction mammoplasty.

[¶ 28] What we are looking for in this contract is whether medical services for complications arising from **medically necessary** reduction mammoplasty are included as a **covered service.** In Section 5, Part I (Obtaining Plan Benefits—Overview of Benefits), it is stated that a member is entitled to receive "Covered Services as described in Section 6" "subject to the terms, conditions, limitations and Exclusions of this Section 5 and Exclusions contained in the Benefit Plan." In Section 5, Part II (Obtaining Plan Benefits—Overview of Direct Benefits), it is stated that a member is entitled to receive "Covered Services specified in Section 6" if certain requirements are satisfied, the pertinent ones for our discussion being "1) The Covered Services are medically necessary" and "6) No Exclusion or limitation applies to the Covered Services."

[¶ 29] I would now go to Section 6 of the contract, entitled Covered Services, to see whether medical services for complications arising from medically necessary reduction mammoplasty are included as a covered service. The first words one sees under the heading of Section 6 are these:

### Section 6
### *Covered Services*

All benefits are subject to plan limitations and exclusions as defined in Section 6(II). **Services that are not specifically**

**identified in this Section are not a covered benefit.** [Emphasis added.]

The emphasized language tells one that medical services for complications arising from medically necessary reduction mammoplasty must be specifically identified in Section 6 in order to be a covered service.

[¶ 30] Section 6 consists of two parts. Part I is entitled DESCRIPTION OF PLAN BENEFITS. Under that heading are thirty-two numbered paragraphs. One does not find "medical services for complications arising from medically necessary reduction mammoplasty" in any of those numbered paragraphs. In particular, one does not find those medical services in Paragraph 23, entitled RECONSTRUCTIVE SURGERY, which does cover all stages of breast reconstruction surgery following a mastectomy in identified instances, and which does not cover cosmetic reduction mammoplasty.

[¶ 31] Part II of Section 6 is entitled BENEFIT PLAN EXCLUSIONS AND LIMITATIONS, and the introductory sentence applicable to each of the ensuing forty-six numbered paragraphs states "The following services are not covered or are subject to limitations." Among the ensuing forty-six numbered paragraphs, several are of interest for our discussion. Paragraph 28 states: "For complications … arising from services, procedures, or treatments excluded by this policy." Paragraph 35 states: "Non-emergent or pre-operative days of Confinement **unless approved as Medically Necessary** by the Plan" (emphasis added). Paragraph 44 states: "Any Health Care Service that is not a covered service regardless of the recommendation or order by a Participating or Non–Participating Provider." Paragraph 45 simply states: "Reduction mammoplasty."

[¶ 32] The plain meaning of the introductory sentence applicable to each of the ensuing forty-six numbered paragraphs, "The following services are not covered or are subject to limitations," is that if there is no wording of limitation within the numbered paragraph in question, then that particular medical service listed in that numbered paragraph is a service not covered by the contract. If, however, there is wording of limitation within the numbered paragraph in question, then that particular medical service listed in that numbered paragraph is a medical service covered by the contract to the extent of the particular limitation. In the case of Paragraph 45 (Reduction mammoplasty), there is no wording of limitation, and, therefore, that medical service is not covered by the contract. As it is excluded by the contract, Paragraph 28, mentioned above, states that medical services for complications arising from reduction mammoplasty are not covered by this contract. In Paragraph 35, mentioned above, the significance of the explicit wording of limitation "unless approved as Medically Necessary by the Plan" is that it demonstrates that Appellee knows how to designate a particular medical service as medically necessary, and, in the case of the medical service for reduction mammoplasty in Paragraph 45, it plainly chose not to so designate.

[¶ 33] Just as one does not find coverage for "medically necessary reduction mammoplasty" in Section 6, Part I, of the contract, one also does not find coverage for those particular medical services in Section 6, Part II. It is important to recall the introductory sentence of Section 6, applicable to both Parts I and II:

Services that are not specifically identified in this Section are not a covered benefit.

[¶ 34] In summary, the relevant provisions of this health insurance contract are sufficiently clear and unambiguous, and I would give effect to the plain and ordinary meaning of the words. In my view, I do not find in this contract any provision that **specifically identifies** medical services for treating complications arising from a medically necessary reduction mammoplasty as a covered benefit. Accordingly, I would affirm the decision of the district court.

VOIGT, Justice, dissenting, in which GOLDEN, Justice, joins.

[¶ 35] I join in Justice Golden's dissenting opinion but write separately to emphasize a few points.

[¶ 36] The majority attempts to create insurance coverage for the appellant where none exists. The appellant underwent breast

reduction mammoplasty surgery in December 2005. Her insurer at that time, Great West, provided coverage and paid her medical claim. After January 1, 2006, the appellant sought medical care for a MRSA infection that resulted from the surgery. Her insurance policy then in effect, provided by the appellee, excluded coverage for cosmetic surgery, including breast reduction surgery, excluded coverage for reduction mammoplasty, and excluded coverage for "complications or side effects arising from services, procedures, or treatments excluded by this policy."

[¶ 37] Where the intent of an insurance policy is clear within its four corners, ambiguity is not created by a subsequent disagreement between the parties as to its meaning. *Colo. Cas. Ins. Co. v. Sammons,* 2007 WY 75, ¶ 12, 157 P.3d 460, 465 (Wyo. 2007); *Principal Life Ins. Co. v. Summit Well Serv., Inc.,* 2002 WY 172, ¶ 19, 57 P.3d 1257, 1262 (Wyo.2002); *Hulse v. First Am. Title Co. of Crook County,* 2001 WY 95, ¶ 37, 33 P.3d 122, 134 (Wyo.2001). Furthermore, one party's subjective intent or interpretation of a contract is not controlling; we look instead to the objective intent of the language used. *Comet Energy Servs., LLC v. Powder River Oil & Gas Ventures, LLC,* 2010 WY 82, ¶ 14, 239 P.3d 382, 387 (Wyo. 2010). This policy is not ambiguous. The exclusions are not ambiguous. There is nothing to construe or interpret. We do not torture the language of a policy to create an ambiguity, and where there is no ambiguity, "there is no room for construction and the policy will be enforced according to its terms." *Aaron v. State Farm Mut. Auto. Ins. Co.,* 2001 WY 112, ¶ 15, 34 P.3d 929, 933 (Wyo.2001) (quoting *McKay v. Equitable Life Assurance Society of the United States,* 421 P.2d 166, 168 (Wyo.1966)). I would affirm.