# IN THE SUPREME COURT, STATE OF WYOMING

## 2016 WY 29

**OCTOBER TERM, A.D. 2015**

<u>**March 3, 2016**</u>

RICK and TERRI WIMER, CURTIS and
CYNTHIA LI, and HARV GLOE,

Appellants
(Plaintiffs),

and

HAROLD REIMLER, and HAROLD
REIMLER TRUSTEE of the REIMLER
FAMILY TRUST,

Appellants
(Third Party Defendants),

v.                                                               S-15-0154

JERRY and CHERI COOK, and COOK'S
CONSTRUCTION, LLC, a Wyoming
Limited Liability Company,

Appellees
(Defendants/Third Party Plaintiffs).


JERRY and CHERI COOK, and COOK'S
CONSTRUCTION, LLC, a Wyoming
Limited Liability Company,

Appellants
(Defendants/Third Party Plaintiffs),

v.                                                               S-15-0155

RICK and TERRI WIMER, CURTIS and
CYNTHIA LI, and HARV GLOE,

Appellees
(Plaintiffs),

and

HAROLD REIMLER, and HAROLD
REIMLER TRUSTEE of the REIMLER
FAMILY TRUST,

Appellees
(Third Party Defendants).

*Appeal from the District Court of Natrona County*
The Honorable Daniel L. Forgey, Judge

*Representing Appellants in Case No. S-15-0154:*
    Cameron S. Walker of Schwartz, Bon, Walker & Studer, LLC, Casper, Wyoming.

*Representing Appellees in Case No. S-15-0154:*
    P. Craig Silva of Williams, Porter, Day, and Neville, P.C., Casper, Wyoming.

*Before BURKE, C.J., and HILL, DAVIS, FOX, and KAUTZ, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of typographical or other formal errors so correction may be made before final publication in the permanent volume.**

**KAUTZ, Justice.**

[¶1]    Rick and Terri Wimer, Curtis and Cynthia Li, and Harv Gloe (hereinafter collectively referred to as the Wimers) filed a complaint against their neighbors, Jerry and Cheri Cook and Cook's Construction, LLC (hereinafter collectively referred to as the Cooks), seeking an injunction prohibiting the Cooks from placing multiple single-family housing structures on a twenty-acre parcel of land owned by the Cooks because, in the Wimers' view, the conduct violated the neighborhood's covenants.    The Cooks responded with a counterclaim and a third-party complaint against all their neighbors, including Harold Reimler, individually and as trustee of the Reimler Family Trust, seeking a declaration from the district court that the covenants had been abandoned.[1] After a bench trial, the district court determined the covenants had not been abandoned and the Cooks' plan to develop the twenty-acre parcel did not violate the covenants. Thereafter, the Wimers filed this appeal and the Cooks cross-appealed.  We affirm in part and reverse in part.

## ISSUES

[¶2]    The Wimers raised several issues on appeal, which can be distilled to the following:

   Whether the district court erred when it denied the Wimers injunctive relief after determining that the Cooks' plan did not violate the protective covenants.

The Cooks cross-appealed and raised the following issue:

   Whether the trial court erred as a matter of law when it drew the legal conclusion that the restrictive covenants have not been abandoned.

## FACTS

[¶3]    On June 7, 1978, Van R. and Kathy Jane Irvine recorded a "Declaration of Covenants, Conditions, and Restrictions" with the Natrona County Clerk for an area that will be referred to as the "Phillips Lane area" in Natrona County.   All of the land involved in this case is subject to these covenants.  The purpose of the covenants was "to insure the use and development of said property for exclusive residential and agricultural purposes only, to prevent the impairment of the attractiveness of said property for such purposes, and to maintain property values therein[.]"  Although lengthy, it is important at the outset to quote the following portions of the covenants:

---

[1] In addition to Harold Reimler, the following individuals were named as third-party defendants in the Cooks' third-party complaint:  Kay A. Page, Sid and Zari Ghaffari, Andrew and Michelle Jozwik, George and Jennifer Marble, and Patrick and Debra Munsell.   However, Harold Reimler, individually and as trustee of the Reimler Family Trust, is the only third-party defendant that is participating in this appeal.

1

## ARTICLE I
## DEFINITIONS

1.  Residential Use:  All of the land designated in this area shall be utilized for single family residential purposes only, except that any and all agricultural operations of any nature may be carried on on any of the land at any time without restriction.

2.  Owner:  Shall mean and refer to the record owner, whether one or more persons or entities, of a fee simple title to any parcel which is part of the property, including contract buyers, but excluding those having such interest merely as security for the performance of an obligation.

3.  Property:  Shall mean and refer to that certain real property described in exhibit "A" attached hereto.

## ARTICLE II
## GENERAL RESTRICTIONS ON ALL OF THE PROPERTY

1.  Zoning Regulations:  No land within the area shall be occupied, used by, or for, any structure or purpose which is contrary to the zoning regulations of Natrona County, Wyoming.

2.  Uses:  Each parcel within the area shall be utilized for single family residential building and agricultural activities of any type, all other uses shall be expressly prohibited.

3.  Prohibited Activities:  Except that the dwelling on any parcel in the area may be leased by the owner or owners thereof for rental income purposes, no business, commercial, or manufacturing enterprise, or any enterprise of any kind or nature, whether or not conducted for a profit, shall be operated, maintained or conducted on any parcel in the area or on any improvement erected or placed therein, nor shall any dwelling or any part thereof be used as a boarding or rooming house, nor shall any mining or quarrying operations or operations for drilling of any oil or gas well be conducted or permitted in the area, nor shall any signs, billboards or advertising devices, except as hereinafter provided, be erected, placed or permitted to remain on any parcel in the area.

. . . .

2

5. <u>Animals and Livestock</u>: It shall be permissible for the owners of any parcel, in addition to household pets, to own and maintain on the parcel horses, cattle, sheep, chickens and rabbits. No animal or animals shall be maintained in the area even though permissible within this provision, if it is determined that such animal or animals constitute a nuisance to other owners in the area. It is expressly understood that all dogs will be controlled and confined to the immediate household yard area of each and every residence in the area. No dogs shall be allowed to run loose and in any way become a nuisance or danger to the other residents of the area or the surrounding area.

6. <u>No Resubdivisions</u>: No parcel less than twenty (20) acres in size shall be sold or conveyed; however, conveyances or dedication of easements for utilities or private lanes or roads may be made. This provision shall be effective through May 1, 1983. After this date, additional subdivision into parcels less than twenty (20) acres in size may be allowed if provided for under Natrona County zoning regulations.

7. <u>Service Yards and Trash</u>: Clothes lines, service equipment, trash, woodpiles, or storage areas shall be screened by planting or fencing to conceal them from view of neighboring parcels, drives and roads. All refuse and trash shall be removed from all parcels and shall not be allowed to accumulate.

8. <u>Fences</u>: All parcels shall be fenced with at least five (5) barbed wires or sheep-tight woven wire and two (2) barbed wires and shall be maintained according to good ranching and management practices. In the event that the fences are not properly maintained, the adjoining property owner shall have the right to perform the necessary repairs and maintenance and share the cost of any repairs and maintenance with the owner.

ARTICLE III
<u>RESTRICTIONS ON RESIDENTIAL TRACTS</u>

1. <u>Number and Location of Buildings</u>: No buildings or structures shall be placed, erected, altered, or permitted to remain on any residential tract other than:
      (1) one detached single family dwelling;
      (2) an attached or detached garage; and
      (3) a service type barn, stable or shed.

2. Mobile Homes: Mobile homes shall be deemed to be within the definition of a single family dwelling (assuming the square footage requirements of paragraph 4, below, are met) if the mobile home is placed on a solid and sightly concrete or concrete block foundation and all portions of the running gear are completely removed. Modular or component houses are also acceptable provided they are placed on a similar foundation.

. . . .

6. Used or Temporary Structures: No temporary house, mobile home, basement, trailer or other structure of a non-permanent nature shall be allowed on any parcel as a place of residence or habitation either permanently or temporarily, except during construction periods, and no new dwelling shall be occupied in any manner prior to its completion. Construction of any new residential structures or outbuildings shall be completed in no more than one (1) year from the date construction commences.

. . . .

ARTICLE V
GENERAL PROVISIONS

1. Severability: Should any part or parts of these covenants be declared invalid or unenforceable by any court of competent jurisdiction, such decision shall not affect the validity of the remaining covenants.

On September 28, 1978, the Irvines recorded an amendment to the covenants in order to allow one parcel of land to be divided into two parcels of 19.88 acres and subsequently conveyed.

[¶4]  All of the parties to this litigation moved into the Phillips Lane area after the covenants had been recorded. Mr. Gloe moved into the area in 1981, followed by Mr. Reimler and the Lis in 1994, the Cooks in 2005, and Mr. and Mrs. Wimer in 2006. At some point in time, relations between the Cooks and the other neighbors soured, resulting in several accusations, disagreements and conflicts involving law enforcement and court intervention. The facts behind those incidents are not relevant and will not be discussed. Suffice it to say that the Cooks and their neighbors have a rancorous relationship.

[¶5]  In 2011, the Cooks bought a twenty-acre parcel of land on Phillips Lane across the road from the approximately 150-acre parcel where they live and farm. That same year and through 2012, the Cooks developed the twenty-acre parcel by building a road, having the property surveyed into ten two-acre lots, and having the county assign addresses to

4

each of the ten lots. The Cooks also had electrical power installed on the lots and septic systems installed on six of the ten lots. Additionally, each of the lots has a water tap that connects to the Poison Spider Water District main line. Importantly, per county zoning regulations, the Cooks are required to maintain ownership of the entire twenty acres— they cannot sell any of the individual two-acre lots.

[¶6] The Cooks placed a house on one lot for Mrs. Cook's mother to live in. The Cooks planned to place single-family housing structures, including modular homes, mobile homes, and RVs, on the remaining lots and rent the lots and homes or simply rent the lots for $500 per month for people to park and live in their own RV or fifth-wheel trailer. The renters would be allowed to keep livestock on the lots. The Cooks advertised the lots in the newspaper and on the internet and have had two different renters that stayed in RVs for short periods of time.

[¶7] On November 2, 2012, the Wimers filed a Complaint for an Injunction and Damages against the Cooks, arguing that the Cooks' plan for the property violates the covenants. The Cooks then filed a Counterclaim and Third-Party Complaint against all of the landowners in the area, seeking a declaratory judgment that the covenants had been abandoned due to various covenant violations.

[¶8] After a bench trial, the district court determined that the Cooks had failed to demonstrate that the covenants had been abandoned by the landowners. The district court also concluded that the Cooks' development of the twenty-acre parcel does not violate the covenants. It stated that Article II, Paragraph 6 of the covenants "specifically allows the Cooks to divide the property without selling or conveying it and while maintaining singular ownership of it in the manner that the Cooks propose." After finding the division of the property appropriate, the court pointed out that Article II, Paragraphs 1 and 2 allow for the placement of a single-family dwelling on each of the ten lots, and Article II, Paragraph 3 allows the Cooks to lease the dwellings for rental income. However, the court concluded that the Cooks' plan to rent lots for people to live in RVs or fifth-wheel trailers does violate Article III, Paragraphs 2 and 6.

## STANDARD OF REVIEW

[¶9] When reviewing a bench trial, this Court reviews the trial court's findings of fact for clear error and its conclusions of law *de novo. Moore v. Wolititch*, 2015 WY 11, ¶ 9, 341 P.3d 421, 423 (Wyo. 2015). Additionally,

> [t]he factual findings of a judge are not entitled to the limited review afforded a jury verdict. While the findings are presumptively correct, the appellate court may examine all of the properly admissible evidence in the record. Due regard is given to the opportunity of the trial judge to assess the

5

credibility of the witnesses, and our review does not entail reweighing disputed evidence. Findings of fact will not be set aside unless they are clearly erroneous. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.

*Id*. (quoting *Miner v. Jesse & Grace, LLC*, 2014 WY 17, ¶ 17, 317 P.3d 1124, 1131 (Wyo. 2014)). "'We assume that the evidence of the prevailing party below is true and give that party every reasonable inference that can fairly and reasonably be drawn from it.'" *Id*., ¶ 10, 341 P.3d at 423 (quoting *Miner*, ¶ 17, 317 P.3d at 1131).

## DISCUSSION

### *Abandonment*

[¶10] The district court determined that while there were some "infrequent, minor, and unoffensive" violations of the covenants, those violations did not result in a radical and permanent change in the agricultural and single-family residential character of the area. Consequently, the district court ruled that the covenants had not been abandoned. After a thorough review of the trial evidence, we find no clear error in reaching that conclusion.

[¶11] The question of "whether a protective covenant has been abandoned as a result of acquiescence in violations of the covenant is [one] of fact that depends on the particular circumstances of each case." *Moore*, ¶ 12, 341 P.3d at 423. For abandonment to exist, the violations must be

> so great, or so fundamental or radical as to neutralize the benefits of the restriction to the point of defeating the purpose of the covenant. In other words, the violations must be so substantial as to support a finding that the usefulness of the covenant has been destroyed, or that the covenant has become valueless and onerous to the property owners.

*Hammons v. Table Mountain Ranches Owners Ass'n*, 2003 WY 85, ¶ 14, 72 P.3d 1153, 1156 (Wyo. 2003) (quoting *Keller v. Branton*, 667 P.2d 650, 654 (Wyo. 1983)). In addition to being radical, the changes must also be permanent in nature, and the burden of proving such is on the party asserting the covenant's abandonment. *Keller*, 667 P.2d at 654.

[¶12] To support their claim that the covenants have been abandoned, the Cooks presented evidence of the following violations:

6

- Mr. Gloe has antlers on his property that have been there for years. Further, there are several vehicles that have not been registered for some time. Mr. Gloe also has a tire on his property that he uses to cover his phone line. The Cooks allege this conduct violates Article II, Paragraph 7 of the covenants, which prohibits the accumulation of trash and refuse on the property. Mr. Gloe's fence has only one strand of barb wire, which is inconsistent with Article II, Paragraph 8 of the covenants, which requires all fences be either five strands of barbed wire or sheep tight woven wire with two barbed wires.

- Mr. and Mrs. Lis' livestock and dogs have been out of their immediate control when the animals wandered off the Li property. Mrs. Li has observed the neighbors' livestock and dogs running at large in the neighborhood. The Cooks contend this conduct violates Article II, Paragraph 5, which states that animals shall not be a nuisance to other owners in the area and dogs will be confined to the immediate household yard area of each residence. Further, in addition to their home, the Lis have a mobile home on their property, which the Cooks claim violates Article III, Paragraph 1, which limits a residential tract to one single-family dwelling. The Lis also have more than one barn, stable, or shed, in violation of Article III, Paragraph 1.

- Mr. Reimler owns a business and he stores his tractors, seeders, and trailers for that business at his residence. He also lists his home phone number on his business cards and he receives faxes for the business at his home. The Cooks argue this violates Article II, Paragraph 3, which prohibits businesses from being operated in the area. Mr. Reimler has also had zoning violations, in violation of Article II, Paragraph 1, and has junk on his property and too many barns, stables, and sheds.

- Mr. Munsell owns five acres in the area, which violates the county zoning ordinances that requires parcels of at least 35 acres and, thereby, violates Article II, Paragraph 1 of the covenants. He has also allowed people to live in a fifth-wheel trailer on his property, in violation of Article III, Paragraph 6, which prohibits individuals from living in a structure of a non-permanent nature. Mr. Munsell has also operated numerous businesses from his home.

- Mr. Ghaffari operates a rental business on his property, has too many outbuildings, has allowed his animals to wander off his property, and has improper fencing.

- Mr. Jozwik has removed topsoil from his property in violation of Article II, Paragraph 3, which prohibits mining or quarrying operations. He also has too

many outbuildings and admitted to having junk on his property and that his dog has not always been confined to the immediate household area.

- Ms. Page has junk, two homes, and improper fencing on her parcel.

- Mr. and Mrs. Wimers' parcel is only 27 acres, which is in violation of the zoning ordinances and, thereby, in violation of the covenants. The Wimers' horses and dogs have gotten loose in the neighborhood and they admitted they have had garbage and junk on their property. They have three small sheds in addition to their house and garage, and they have had people stay in a travel trailer on the parcel. Mrs. Wimer owns a business and the business address is her home address, she has received business calls at home, and prints invoices and flyers for the business on her home computer and printer. She has also operated a nonprofit organization, the address of which is the Wimers' home address.

- Mr. Marble has had junk on his parcel, his dogs have gotten loose, and he had a limited veterinary practice at his home.

[¶13] Based upon these various covenant infractions, the Cooks believe the covenants have been abandoned in their entirety. However, the Cooks have failed to acknowledge or appreciate the fact that the covenants also contain a severability provision in Article V, Paragraph 1:

1. Severability: Should any part or parts of these covenants be declared invalid or unenforceable by any court of competent jurisdiction, such decision shall not affect the validity of the remaining covenants.

Because of the severability clause, it does not matter whether the covenants regarding loose horses and dogs, junk, and fencing were abandoned. Even if those covenants have been abandoned, the other covenants remain valid. Instead, the only relevant conduct is that which arguably shows abandonment of the covenants being enforced against the Cooks. *See Mountain Park Homeowners Ass'n, Inc. v. Tydings*, 883 P.2d 1383, 1387 (Wash. 1994). The district court recognized the severability clause, and properly relied upon it to restrict evidence that could be considered to support the abandonment claim.

[¶14] The covenants the Wimers seek to enforce are Article III, Paragraph 1, which restricts each residential tract to one detached single-family dwelling, and Article II, Paragraph 6, which prohibits structures of a non-permanent nature being used as housing (i.e. RVs) on the parcels. Therefore, those are the covenants the Cooks must prove have been abandoned in order to implement their property development plan. The evidence at trial showed that Ms. Page has two homes on her parcel, and in addition to their home, Mr. and Mrs. Li have a mobile home on their parcel. Ms. Page testified that nobody lived

8

in the second home on her parcel; instead, she used it as a storage facility and a place for her dogs. Mrs. Li testified that the mobile home is used as a place for an employee to stay while he or she is working on the ranch. The evidence also showed that, until now, none of the landowners in the area had ever tried to enforce the covenants. With respect to RVs, the Wimers have allowed relatives to visit and stay in a fifth-wheel trailer on their parcel for several weeks at a time. Mr. and Mrs. Highum both testified that they had allowed an individual to stay on their parcel in an RV trailer for approximately three months.[2]

[¶15] While these few instances appear to be violations of the covenants, the Cooks have not demonstrated that these violations radically and permanently changed the overall neighborhood as required to prove abandonment. In fact, the Cooks have not argued that the violations have changed the overall neighborhood at all. Their argument, instead, is that multiple other covenants have been violated over time. They also assert that six of the landowners want the covenants abandoned, and claim that the covenants do not serve any practical purpose. However, those points are not applicable in determining whether a covenant has been abandoned.

[¶16] When using the proper standard, we find the evidence supports the district court's conclusion that these violations did not radically and permanently change the overall neighborhood. The covenants were created to "insure the use and development of said property for exclusive residential and agricultural purposes only[.]" Although Ms. Page had two homes on her property, there is no evidence that anyone else ever lived on the property or that she sought to have another family move into the second residence. While the mobile home on the Lis' parcel is used to house an additional person, that person is living there only because he or she is employed to assist in the agricultural activities on the property. The fact that the Wimers and the Highums have allowed people to stay in RVs on their parcels does not show a change that is permanent in nature. The Wimers' guests have stayed on two occasions and the visits were temporary in nature. There is no evidence the Highums intend to permanently allow people to live in an RV on their property.

[¶17] The Cooks recognize that this Court previously has been unwilling to find that covenants have been abandoned. *See Moore*, 2015 WY 11, 341 P.3d 421; *Steiger v. Happy Valley Homeowners Ass'n*, 2010 WY 158, 245 P.3d 269 (Wyo. 2010); *Hammons*, 2003 WY 85, 72 P.3d 1153. While the Cooks argue that this case is different from all of the other cases, they have not explained how the facts of this case vary from the facts of past decisions.

---

[2] The Highums are property owners in the Phillips Lane area, but they bought their property from the Jozwiks after the Cooks had filed the Third-Party Complaint against all of the landowners. Therefore, the Highums are not listed as a defendant in the original Third-Party Complaint.

9

[¶18] For example, in *Moore*, 2015 WY 11, 341 P.3d 421, Moore violated her neighborhood's covenants by operating a daycare in her home. *Id.*, ¶ 11, 341 P.3d at 423. She argued that various other covenant violations by other homeowners in the neighborhood amounted to an abandonment of the covenants. *Id.* In support of her argument, she pointed out that the neighbors had numerous trailers, sheds, boats, unregistered vehicles, and other items present on the properties that violated the covenants. *Id.*, ¶ 14, 341 P.3d at 424. She also alleged many neighbors engaged in business activities on the properties, such as babysitting, storing company equipment, occasionally meeting with crew members before going to a job site, and hosting business related presentations. *Id.* We determined that Moore failed to show that any of these activities resulted in a radical and permanent change to the neighborhood. *Id.*, ¶ 24, 341 P.3d at 426.

[¶19] The situation here is no different. There certainly have been violations of the covenants and it appears none of the neighbors have complained. But, these violations mostly were unrelated to the covenants which the Wimers seek to enforce. The few violations which did relate to the prohibitions of more than a single-family dwelling on a tract and of temporary structures simply did not change the nature of the area in a radical and permanent way. The district court's findings that any covenant violations did not change the nature of the area were not clearly erroneous. Therefore, the district court properly concluded the covenants were not abandoned.

*Covenant Violations*

[¶20] The district court ruled that the Cooks' development of the twenty-acre parcel into ten rental lots did not violate the covenants. The Wimers challenge that determination. The Wimers argue that the Cooks' plan to place multiple single-family dwellings on the twenty-acre parcel violates, among other provisions, Article III, Paragraph 1 of the covenants, which limits buildings and structures on any parcel to one detached single-family dwelling; an attached or detached garage; and a service type barn, stable, or shed. They claim that the twenty-acre parcel remains a single parcel for purposes of the covenants, even though the Cooks have attempted to "subdivide" it into ten smaller "parcels." The Cooks, on the other hand, assert that Article II, Paragraph 6 of the covenants permits them to make the twenty-acre parcel into smaller parcels by "subdividing" it so long as they retain ownership of those smaller parcels and do not sell them. The key concern in this discussion, then, is the meaning of the terms "parcel" and "subdivision" as used in the covenants.

[¶21] The "[i]nterpretation of covenants imposing restrictions or conditions on the use of land is a matter of law for the courts." *Omohundro v. Sullivan*, 2009 WY 38, ¶ 8, 202 P.3d 1077, 1081 (Wyo. 2009). Because it is a question of law, we review the covenants *de novo*, without giving any deference to the district court's determinations at the

10

conclusion of the trial. *Stevens v. Elk Run Homeowners' Ass'n, Inc.,* 2004 WY 63, ¶ 12, 90 P.3d 1162, 1166 (Wyo. 2004).

[¶22] Covenants are contractual in nature and, therefore, we interpret them according to contract law principles. *Omohundro,* ¶ 9, 202 P.3d at 1081. "A court's goal is to determine and effectuate the intention of the parties, especially the grantor or declarant." *Id.* To do so, we examine all of the covenants, and not just one clause or paragraph, and give the words their plain and ordinary meaning. *Id.* If the language in the covenants is clear and unambiguous, we look only to the four corners of the document to determine the parties' intent. *Stevens,* ¶ 13, 90 P.3d at 1166. "A disagreement between the parties as to the meaning of covenants does not give rise to an ambiguity." *Omohundro,* ¶ 9, 202 P.3d at 1081.

[¶23] The district court determined that the covenants allow the Cooks to "subdivide" the twenty-acre parcel into ten different two-acre lots, place a single-family dwelling on each of the ten lots, and maintain ownership of the entire parcel and the dwellings. In reaching this conclusion, the court explained:

> The [c]ourt has reviewed the terms or language used in the written covenant documents and finds that there is no reason to believe that the term "parcel" is intended to mean anything other than its common definition of a tract of land, or that the term "subdivision" is intended to mean anything other than its common definition of a division of a thing into two smaller parts, or that the term "tract" is intended to mean anything other than its common definition of a specified parcel of land.

Further, the court determined that "Article II, [Paragraph] 6, of the covenants specifically allows the Cooks to divide the property without selling or conveying it and while maintaining singular ownership of it in the manner that the Cooks propose."

[¶24] We disagree. While the term "subdivision" is not a defined term in Article I of the covenants, Article II, Paragraph 6 of the covenants guides us in determining what the term means. That Paragraph states:

> 6. <u>No Resubdivisions</u>: No parcel less than twenty (20) acres in size shall be sold or conveyed; however, conveyances or dedication of easements for utilities or private lanes or roads may be made. This provision shall be effective through May 1, 1983. After this date, additional subdivision into parcels less than twenty (20) acres in size may be allowed if provided for under Natrona County zoning regulations.

11

In the beginning of that Paragraph, the grantors state that no parcel less than twenty acres shall be **sold or conveyed**. It then includes a date at which time that provision expires— May 1, 1983—after which, **subdivision** into parcels less than twenty acres may be allowed. The Cooks argue, and the district court concluded, that the term subdivision does not mean to sell or convey; instead, it simply means to break up into smaller parts. However, to accept that conclusion would require us to completely disregard that the acts prohibited before May 1, 1983, were selling and conveying. *Shaffer v. Winhealth Partners*, 2011 WY 131, ¶ 17, 261 P.3d 708, 713 (Wyo. 2011) (rules of contract interpretation require us to avoid construing a contract in a way as to render one of its provisions meaningless). If the term "subdivision" allows a parcel owner to maintain ownership over the entire parcel while "dividing it into smaller parts," there would be no need to declare that it was acceptable to do so after May 1, 1983. The term "subdivision" in these covenants anticipates the sale or transfer of smaller parts of land, not just surveying those smaller parts or getting separate mail addresses for them. Without such a sale or transfer, a single parcel remains a single parcel, whether the owner has had separate lots surveyed or not.

[¶25] The conclusion that "subdivision" requires an act of selling or conveying a portion of the property is further supported by the Irvines' amendment to the covenants they executed a little more than three months after recording the original covenants. In the amendment, the Irvines sought to exclude one parcel of land from the twenty-acre requirement found in Article II, Paragraph 6. The relevant part of the amendment states:

> No parcel less than twenty (20) acres in size shall be **sold or conveyed**; however conveyances or dedication of easements for utilities or private lanes or roads may be made. With respect to Parcel #5 . . . said parcel may be **subdivided** into two (2) parcels of approximately equal size, each parcel **conveyed** to be not less than 19.88 acres in size. This provision shall be effective through May 1, 1983. After this date, additional **subdivision** into parcels less than twenty (20) acres in size may be allowed.

(Emphasis added.) The amendment uses the word "subdivided" immediately before discussing conveyance, thus signifying the grantors intended that a "subdivision" was the breaking up of land into smaller pieces for sale or conveyance. Therefore, the Cooks' twenty-acre parcel has not been subdivided and remains one parcel and residential tract for the purposes of the covenants.

[¶26] With that being the case, there can be little dispute that the Cooks are limited to one single-family dwelling on the twenty-acre parcel. The Cooks' plan to put ten single-family dwellings on the parcel clearly violates Article III, Paragraph 1. We recognize that the Cooks' plan has been blessed by the county zoning authorities; however, that

12

approval does not override the fact that the plan violates the covenants. As we have previously stated: "[I]t is well settled that zoning ordinances cannot override, annul, abrogate, or relieve land from building restrictions or covenants placed upon them." *Anderson v. Bommer*, 926 P.2d 959, 963 (Wyo. 1996) (citing *Fox v. Miner*, 467 P.2d 595, 597 (Wyo. 1970)). Because the covenants prohibit multiple single-family dwellings on a parcel, we reverse the district court's conclusion that the Cooks' plan does not violate the covenants.[3]

## CONCLUSION

[¶27] Evidence in the record supports the district court's finding that although the parties had violated some covenants, those violations did not change the nature of the area in a radical and permanent way. The district court's finding was not clearly erroneous. The district court then properly concluded that the Cooks failed to demonstrate the appropriate legal basis for abandonment of covenants. Therefore, we affirm the district court's order that the covenants have not been abandoned. However, we find that the Cooks' plan to put multiple single-family dwellings on their twenty-acre parcel violates the covenants. That parcel remains a single parcel for purposes of the covenants, and can have only one single-family dwelling. Therefore, we reverse the district court's order in that respect.

---

[3] The Wimers also argue that the Cooks' plan violates Article II, Paragraph 3, which prohibits business or commercial enterprise on the parcels, and that the plan violates county zoning regulations. The Cooks argue that this Court should not consider the argument about business and commercial enterprises because it was not raised in the district court and the district court did not discuss it in its order. Because we have determined that the Cooks' plan otherwise violates the covenants, we decline to consider whether the plan violates additional covenants or a county zoning ordinance.