# IN THE SUPREME COURT, STATE OF WYOMING

## 2016 WY 81

### APRIL TERM, A.D. 2016

### August 17, 2016

CENTURY SURETY COMPANY,

Appellant
(Plaintiff),

v.

S-15-0294

JIM HIPNER, LLC; and HUEY BROCK,

Appellees
(Defendants).

*W.R.A.P. 11 Certification*
*from the United States Court of Appeals for the Eighth Circuit*
*The Honorable Lavenski R. Smith, Judge*

***Representing Appellant:***

Christopher C. Voigt and Nicholas T. Haderlie of Crowley Fleck PLLP, Sheridan, Wyoming; Jeffrey C. Gerish of Plunkett Cooney, Bloomfield Hills, Michigan; Bradford S. Moyer of Plunkett Cooney, Kalamazoo, Michigan. Argument by Mr. Gerish.

***Representing Appellees:***

Duane A. Lillehaug of Maring Williams Law Office, P.C., Fargo, North Dakota, representing Jim Hipner, LLC; Colleen M. Pratt and Michael D. Ainbinder of Ainbinder & Pratt, Long Beach, California, representing Huey Brock; Philip White Jr. of Karpan and White P.C., Cheyenne, Wyoming, representing Jim Hipner, LLC and Huey Brock. Argument by Mr. Ainbinder.

***Before BURKE, C.J., and HILL, DAVIS, FOX, and KAUTZ, JJ.***

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**FOX, Justice.**

[¶1]    The United States Court of Appeals for the Eighth Circuit certified a question to this Court concerning the enforceability of an insurance policy notice provision. Specifically, the Eighth Circuit asked:

> [W]hether, under Wyoming law, an insurer must be prejudiced  before being entitled to deny coverage when the insured has failed to give notice "as soon as practicable." Many states have expressly adopted a notice-prejudice rule under which an insurer will only be able to disclaim coverage if it demonstrates it was actually prejudiced by late notice. *See* 46A C.J.S. Insurance § 1769.  To date, Wyoming has not.

We answer in the affirmative.

## *FACTS*

[¶2]    Although the parties provided a record containing various documents, we find it unnecessary to refer to that record.  Where a question of law is certified to this Court pursuant to W.R.A.P. 11, we rely upon the factual determinations of the certifying court. *Wexpro Co. v. Brimhall*, 7 P.3d 42, 43 (Wyo. 2000); *Allhusen v. State By and Through Wyo. Mental Health Professions Licensing Bd.*, 898 P.2d 878, 881 (Wyo. 1995).  The following facts were provided in the Eighth Circuit's Order for Certification of Questions of State Law:

> In 2010, [Jim Hipner, LLC ("Hipner")], a trucking company, obtained a $2 million umbrella policy ("Century Policy") from Century [Surety Company ("Century")] in order to secure a contract with a customer.  In paragraph 3, the Century Policy contains the following notice provision:
>
> > b. If you notify any "underlying insurer" of an "occurrence" or an offense involving "bodily injury" or "personal and advertising injury", you must see to it that we are also notified in writing as soon as practicable.
>
> Later, in the same paragraph, the Century Policy contains an exclusion provision that states:
>
> > Failure to notify us, as required per paragraphs 3.a. and 3.b. above, of an "occurrence" or offense as soon as

1

practicable will result in exclusion of coverage whether we are prejudiced or not.

On March 31, 2011, one of Hipner's drivers created a road obstruction that produced an injury-generating, multi-vehicle collision ("the accident") in North Dakota. According to the North Dakota Motor Vehicle Crash Report, a passenger in a car that was rear-ended by another vehicle suffered injuries deemed minor at the time. The Motor Vehicle Crash Report indicates that the other persons involved in the accident had "non-incapacitating" injuries at the time of the accident. Jim Hipner ("Jim"), a co-owner of Hipner, learned of the accident the same day that it occurred.

Jim testified that, upon his arrival to the scene of the accident, the state patrol officer told him "there were no serious injuries." Jim also testified that the officer told him that one of the passengers had "some numbness or tingling," but that "it was nothing to worry about" and that this "happens quite often in these cases." According to the medical records, one person, Huey Brock, arrived at Trinity Hospital on March 31 unable to move his arms or legs.

On the day of the accident, Jim called and reported the accident to representatives at Willis of Wyoming and Great West Casualty Company ("Great West"), the underlying primary insurance companies for Hipner. But, no one at Hipner notified Century. In his deposition, Jim stated that he thought notifying Willis of Wyoming satisfied his obligations to notify all of the insurance companies. On March 31, Great West set up a claim and began investigating the accident.

Brock's injuries rendered him quadriplegic. Jim testified that he did not know that Brock sustained significant injuries from the accident until May 2011. On September 20, 2011, Century was notified of the accident indirectly when Willis of Wyoming sent Century the policy renewal for Hipner. The next day, Century created an umbrella claim relating to the accident. On December 31, 2011, Great West sent its claim file, including the investigation materials, to Century. Century did not perform its own investigation of the accident because "[t]he duty to investigate the accident fell upon Great West Casualty. Century Surety relied upon Great

2

West Casualty to perform a competent investigation." Nevertheless, Century later found fault with Great West's investigation, claiming it was not thorough enough. In November 2012, Century received Brock's settlement demand but declined to participate in the settlement "based upon lack of coverage for Jim Hipner LLC under the Century Policy coupled with serious questions regarding liability and damages."

Century then filed the instant action in federal court seeking a declaratory judgment that Century does not have an obligation to defend or indemnify Hipner in connection with any claims arising out of or relating to the accident. Both Hipner and Brock filed motions for summary judgment, or in the alternative a motion for partial summary judgment, requesting Century's claims for declaratory relief be denied. Century, in response, filed a cross-motion for summary judgment seeking a declaration that it has no obligation to defend or indemnify Hipner in connection with the accident. Specifically, Century argued that it is not liable under Wyoming law because Hipner failed to provide written notice "as soon as practicable" as required by the Century Policy.

The district court determined that although the Century Policy clearly and unambiguously requires written notice of a claim, the "as soon as practicable" requirement is ambiguous. Citing to *Pacheco v. Continental Cas. Co.*, 476 P.2d 166 (Wyo. 1970), the district court concluded that Wyoming courts have found similar language ambiguous. After a "balancing of the beneficiary's right to have the policy liberally construed in his favor with the legitimate interest of the insurer in being protected from stale claims," *Pacheco*, 476 P.2d at 169, the district court found that Century received timely notice under the Century Policy as a matter of Wyoming law.

[¶3] Century appealed to the United States Court of Appeals for the Eighth Circuit. On December 28, 2015, the Eighth Circuit filed the Order for Certification of Questions of State Law, stating the question quoted above, *see supra* ¶ 1. On January 20, 2016, this Court issued a Notice of Agreement to Answer Certified Question.

3

[¶4]     Pursuant to W.R.A.P. 11.01, we may answer a question of law that may be determinative of a cause pending in the certifying court for which there appears to be no controlling precedent from this Court. *Preston v. Marathon Oil Co.*, 2012 WY 66, ¶ 4, 277 P.3d 81, 83 (Wyo. 2012). Certified questions are queries of law that are reviewed de novo. *Id.*; *State v. Mares*, 2014 WY 126, ¶ 10, 335 P.3d 487, 493 (Wyo. 2014).

*State v. Black Hills Power, Inc.*, 2015 WY 99, ¶ 4, 354 P.3d 83, 85 (Wyo. 2015).

## *DISCUSSION*

[¶5]    In *North Fork Land & Cattle, LLLP v. First American Title Insurance Company*, 2015 WY 150, ¶ 14, 362 P.2d 341, 346 (Wyo. 2015), we explained that Wyoming courts interpret insurance policies like other contracts; however, we give insurance policy language "the plain meaning a reasonable insured would understand it to mean," and where terms are ambiguous, they are strictly construed against the insurer. We take this approach because insurance policies are contracts of adhesion where "the insured has little or no bargaining power to vary the terms . . . ." *Id.* (quoting *Doctors' Co. v. Ins. Corp. of America*, 864 P.2d 1018, 1024 (Wyo. 1993) (internal citations omitted)).

[¶6]    Century argues that the policy language at issue is unambiguous and even a strict construction of that language in favor of Hipner requires its enforcement. Century also claims that because the notice provision language is not unconscionable, it must be enforced. Finally, Century avers that Wyoming law requires the rejection of the notice-prejudice rule (which requires an insurance company to be prejudiced before it can deny coverage based upon the violation of a notice provision in an insurance policy), especially in this case where the notice provision contains language requiring notice whether Century was prejudiced or not. In response, Hipner asserts that, regardless of the policy language, prejudice should be required when an insurer denies coverage based upon a failure to provide timely notice of a claim or occurrence and urges this Court to adopt the notice-prejudice rule because it is consistent with Wyoming precedent and is warranted by a variety of public policy considerations.

### *The Traditional Rule and the Notice-Prejudice Rule*

[¶7]    Traditionally, courts held that in order to avoid liability or its duty to defend, an insurance carrier only needed to establish that an insured's notice of an occurrence or claim was untimely; prejudice to the insurer was irrelevant to the inquiry. Charles C. Marvel, Annotation, *Modern Status of Rules Requiring Liability Insurer to Show*

4

*Prejudice to Escape Liability Because of Insured's Failure or Delay in Giving Notice of Accident or Claim, or in Forwarding Suit Papers*, 32 A.L.R.4th 141, § 2 (updated 2106). According to this view, "timely notice is not merely a technical requirement, but, rather, a valid prerequisite to coverage, and any prejudice resulting from a delay in giving notice becomes immaterial." 13 Steven Plitt et al., *Couch on Insurance* § 193:32 (3d ed. updated 2016). This approach "is grounded upon a strict contractual interpretation of insurance policies under which delayed notice was viewed as constituting a breach of contract, making the issue of insurer prejudice immaterial." *Clementi v. Nationwide Mut. Fire Ins. Co.*, 16 P.3d 223, 227 (Colo. 2001) (citing *Alcazar v. Hayes*, 982 S.W.2d 845, 849 (Tenn. 1998); *Aetna Cas. & Sur. Co. v. Murphy*, 538 A.2d 219, 220 (Conn. 1988) (*overruled in part on other grounds by Arrowood Indem. Co. v. King*, 39 A.3d 712, 725 (Conn. 2012)); *Ouellette v. Maine Bonding & Cas. Co.*, 495 A.2d 1232, 1234 (Me. 1985); *Brakeman v. Potomac Ins. Co.*, 371 A.2d 193, 195 (Pa. 1977)). A handful of jurisdictions still follow the traditional rule. 13 Plitt, *supra*, § 193:32 (citing cases); 1 Barry. R. Ostrager and Thomas R. Newman, *Handbook on Insurance Coverage Disputes* § 4.05[a] (17th ed. 2015).

[¶8] Many courts and commentators have acknowledged the public policy rationales justifying the inclusion of notice provisions in insurance policies. For example, the Tennessee Supreme Court noted:

> The purpose of a policy provision requiring the insured to give the company prompt notice of an accident or claim is to give the insurer an opportunity to make a timely and adequate investigation of all the circumstances. An adequate investigation often cannot be made where notice is long delayed, because of the possible removal or lapse of memory on the part of witnesses, the loss of opportunity for examination of the physical surroundings and making photographs thereof for use at the trial, and the possible operation of fraud, collusion, or cupidity. Such a requirement tends to protect the insurer against fraudulent claims, and also against invalid claims made in good faith. If the insurer is given the opportunity for a timely investigation, reasonable compromises and settlements may be made, thereby avoiding prolonged and unnecessary litigation.

*Alcazar v. Hayes*, 982 S.W.2d 845, 849 (Tenn. 1998) (quoting 1 Eric Mills Holmes & Mark S. Rhodes, *Appleman on Insurance* § 4.30 (2d ed. 1996) and citing 13A George J. Couch, et al., *Couch on Insurance* § 49:50 (2d rev. ed. 1982); Richard L. Suter, *Insurer Prejudice: An Analysis of an Expanding Doctrine in Insurance Coverage Law*, 46 Me. L. Rev. 221, 223-24 (1994); F. Warren Jacoby, Comment, *The Materiality of Prejudice to the Insurer as a Result of the Insured's Failure to Give Timely Notice*, 74

Dick. L. Rev. 260, 262-63 (1970); Comment, 68 Harv. L. Rev. 1436, 1436-38 (1955)); *see also Pacheco v. Continental Cas. Co.*, 476 P.2d 166, 169 (Wyo. 1970). Further, the public can be harmed by untimely claims due to "increased premiums and inadequate insurance administration." *Alcazar*, 982 S.W.2d at 849. Prompt notice also enables insurers to preserve adequate reserve funds. *Utica Mut. Ins. Co. v. Fireman's Fund Ins. Companies*, 748 F.2d 118, 121 (2d Cir. 1984) ("Prompt notice permits the insurer to . . . adjust its books in order to maintain a proper reserve fund in light of the insured's claim.").

[¶9]   Recognizing that this public policy is not harmed by requiring insurers to be prejudiced before denying coverage for late notice, many courts have adopted the notice-prejudice rule which requires proof of prejudice for an insurer to avoid liability in the event that a policyholder provides them with untimely notice of an occurrence. 13 Plitt, *supra,* § 193:49; 1 Jeffrey E. Thomas and Francis J. Mootz, III, *New Appleman on Insurance Law* § 4.04[4][d][ii] (2015); *Clementi*, 16 P.3d at 229 ("Since the purpose of a policy's notice requirement is to allow an insurer to adequately investigate and defend a claim, courts that have adopted the notice-prejudice rule have permitted an insurer to deny benefits only where its ability to investigate or defend the insured's claim was compromised by the insured's failure to provide timely notice.") A "vast majority" of jurisdictions now follow the modern trend and have adopted the notice-prejudice rule. *Alcazar*, 982 S.W.2d at 850; *Atlantic Cas. Ins. Co. v. Greytak*, 350 P.3d 63, 66 (Mont. 2015); *Prince George's Cty. v. Local Gov't Ins. Trust*, 879 A.2d 81, 94 n.9 (Md. 2005) (listing thirty-eight states and two territories that have adopted the rule as a matter of common law); *Ferrando v. Auto-Owners Mut. Ins. Co.*, 781 N.E.2d 927, 934 (Ohio 2002) ("Very few courts today follow the traditional approach in notice cases."). These courts have countenanced three policy justifications for departing from the traditional approach: 1) "the adhesive nature of insurance contracts"; 2) "the public policy objective of compensating tort victims"; and 3) "the inequity of the insurer receiving a windfall due to a technicality." *Ferrando*, 781 N.E.2d at 935; *see also Friedland v. Travelers Indem. Co.*, 105 P.3d 639, 646 (Colo. 2005).

[¶10] In *Brakeman v. Potomac Insurance Company*, 371 A.2d 193 (Pa. 1977), the Pennsylvania Supreme Court explained its departure from the traditional rule, remarking that the traditional approach fails to recognize the true nature of insurance contracts. The court stated:

> The rationale underlying the strict contractual approach reflected in our past decisions is that courts should not presume to interfere with the freedom of private contracts and redraft insurance policy provisions where the intent of the parties is expressed by clear and unambiguous language. We are of the opinion, however, that this argument, based on the view that insurance policies are private contracts in the

6

traditional sense, is no longer persuasive. Such a position fails to recognize the true nat[u]re of the relationship between insurance companies and their insureds. ***An insurance contract is not a negotiated agreement; rather its conditions are by and large dictated by the insurance company to the insured.*** The only aspect of the contract over which the insured can 'bargain' is the monetary amount of coverage. And, as we have recognized, notice of accident provisions, such as that with which we are concerned instantly, are uniformly found in liability insurance policies. *Meierdierck v. Miller*, 147 A.2d [406,] 408 [(Pa. 1959)]. Indeed, a review of the cases indicates that often the policies express the condition in identical language. In *Cooper v. Government Employees Insurance Co.*, 51 N.J. 86, 237 A.2d 870 (1968), the Supreme Court of New Jersey stated:

> '. . . (W)e have recognized that the terms of an insurance policy are not talked out or bargained for as in the case of contracts generally, that the insured is chargeable with its terms because of a business utility rather than because he read or understood them, and hence an insurance contract should be read to accord with the reasonable expectation of the purchaser so far as its language will permit.'

51 N.J. at 93, 237 A.2d at 873. Thus, an insured is not able to choose among a variety of insurance policies materially different with respect to notice requirements, and a proper analysis requires this reality be taken into account.

*Id*. at 196 (emphasis added); *see also* Susan Randall, *Freedom of Contract in Insurance*, 14 Conn. Ins. L.J. 107, 107-08 (2007) ("There is no 'bargain' to be protected [in an insurance policy]; instead, there is an agreement on terms over which the consumer has no control and the insurance company has incomplete control.").

[¶11] We have repeatedly recognized the unequal bargaining power between an insurance company and an insured, and in a number of cases, we have held that insurance policies are contracts of adhesion. *See, e.g.*, *Evans v. Farmers Ins. Exch.*, 2001 WY 110, ¶ 9, 34 P.3d 284, 286 (Wyo. 2001) ("Because insurance policies represent contracts of adhesion where the insured has little or no bargaining power to vary the terms, if the language is ambiguous, the policy is strictly construed against the insurer." (citation omitted)); *Harper v. Fidelity & Guar. Life Ins. Co.*, 2010 WY 89, ¶ 37, 234 P.3d 1211, 1222 (Wyo. 2010) (acknowledging "the usual disparity of bargaining power between an

insurer and the fact that insurance contracts are generally contracts of adhesion"); *Shaffer v. Winhealth Partners*, 2011 WY 131, ¶ 24, 261 P.3d 708, 714 (Wyo. 2011) (Golden, J., dissenting) ("[R]egardless of the source of one's health insurance, there is severely limited opportunity for negotiation as to the standard terms of the health insurance contract." (citation omitted)); *see also North Fork Land & Cattle*, 2015 WY 150, ¶ 14, 362 P.3d at 346; *T.M. ex rel. Cox v. Executive Risk Indem. Inc.*, 2002 WY 179, ¶ 8, 59 P.3d 721, 725 (Wyo. 2002); *Gainsco Ins. Co. v. Amoco Prod. Co.*, 2002 WY 122, ¶ 7, 53 P.3d 1051, 1056 (Wyo. 2002); *Doctors' Co.*, 864 P.2d at 1024; *St. Paul Fire & Marine Ins. Co. v. Albany Cty. Sch. Dist. No. 1*, 763 P.2d 1255, 1258 (Wyo. 1988).

[¶12] A second basis for adopting the notice-prejudice rule is the public interest in enforcing insurance contracts to further compensate accident victims, including innocent third parties. As one court explained, "adoption of the modern rule . . . promotes the social function of insurance coverage: providing compensation for injuries sustained by innocent members of the public." *Great American Ins. Co. v. C.G. Tate Constr. Co.*, 279 S.E.2d 769, 774 (N.C. 1981). "Insurance contracts are not purely private matters between insurance companies and their insureds; rather there is a public interest in automobile liability insurance contracts and that is the protection of innocent victims . . . ." *Alcazar*, 982 S.W.2d at 851 (quoting *Brakeman*, 371 A.2d at 198 n.8); *see also* Suter, 46 Me. L. Rev. at 235; David P. Leonard, *The New Wigmore: A Treatise on Evidence: Selected Rules of Limited Admissibility* § 6.4.3 (2016) ("Victim compensation is a well-recognized goal of the law, and broader insurance would help to assure that the compensation of accident victims does not depend on the fortuity of the wrongdoer's financial status.").

[¶13] Wyoming's legislature recognized this public interest when it enacted the Motor Vehicle Safety Responsibility Act, Wyo. Stat. Ann. §§ 31-9-101 through 31-9-415. That statute requires motor vehicle owners and operators to provide proof (via insurance, a bond, or depositing money with the director of the department of transportation) that they are financially able to meet a minimum level of damages to third parties that might result from accidents arising out of the use of their motor vehicle. Wyo. Stat. Ann. §§ 31-9-102(a)(xi) and 31-9-402 (LexisNexis 2015). In upholding the constitutionality of that act, we acknowledged the need to protect innocent parties and that insurance serves such a purpose. We explained that "[a]ny appropriate means adopted by the states to insure competence and care on the part of its licensees and to protect others using the highway is consonant with due process. Some states require insurance or its equivalent as a condition of the issue of a license." *Thornley v. Wyoming Highway Dep't, Motor Vehicle Div.*, 478 P.2d 600, 602 (Wyo. 1971) (citation omitted).

[¶14] A final justification given for adopting the notice-prejudice rule is that when prejudice to the insurer is required before it can deny coverage based upon late notice, "no undeserved windfalls will be reaped by the insurer." Suter, 46 Me. L. Rev. at 235. For example, the court in *Brakeman* reasoned that "[a]llowing an insurance company,

which has collected full premiums for coverage, to refuse compensation to an accident victim or insured on the ground of late notice, where it is not shown timely notice would have put the company in a more favorable position, is unduly severe and inequitable." *Brakeman*, 371 A.2d at 198; *see also Foundation Reserve Ins. Co. v. Esquibel*, 607 P.2d 1150, 1152 (N.M. 1980) ("If we were to hold otherwise, a 'windfall for the insurer at the expense of the public' would result.") (citation omitted)). The Restatement (Second) of Contracts allows a court to excuse a party's failure to perform a condition in the contract if an inequitable forfeiture would occur and the condition is not a material part of the contract. Restatement (Second) of Contracts § 229 (updated 2016).

> The insurer prejudice rule is essentially an application of this principle. By excusing non-performance of procedural requirements in cases where an insurer has not been prejudiced, the court is essentially excusing the non-occurrence of an immaterial condition. If the insured's failure to perform the condition did not result in prejudice to the insurer, the rule assumes that the condition was not a material part of the insurance contract.

Suter, 46 Me. L. Rev. at 235-36 (citing Restatement (Second) of Contracts § 229 (1979)). In Wyoming, we have expressed our disfavor of undeserved windfalls to insurance companies. *See Aaron v. State Farm Mut. Auto. Ins. Co.*, 2001 WY 112, ¶ 12, 34 P.3d 929, 932-33 (Wyo. 2001) (citations omitted) ("We will presume the payment of additional premiums was not intended to result in a 'windfall to the insurer' . . . .").

[¶15]   Based upon these policy rationales, a majority of courts have overturned precedent following the traditional approach in favor of the notice-prejudice rule. *See, e.g.*, *Clementi*, 16 P.3d at 227; *Alcazar*, 982 S.W.2d at 853-54; *Cooperative Fire Ins. Ass'n of Vermont v. White Caps, Inc.*, 694 A.2d 34, 36-38 (Vt. 1997); *Great American Ins. Co.*, 279 S.E.2d at 774; *see also Ouellette*, 495 A.2d at 1235. We agree with these courts and hold that the better-reasoned approach is to require prejudice to the insurer before coverage may be denied based upon a violation of a notice provision contained in the policy. As the *Alcazar* court concluded:

> Though we are hesitant to carve out an exception to the axiom proscribing judicial alteration of the terms of an unambiguous contract, we have determined, due to compelling public policy justifications, that it is . . . appropriate to depart from a rigid application [of contract interpretation]. We join the vast majority of jurisdictions which take into consideration the degree to which the insurer has been prejudiced by the delay in notice.

*Alcazar*, 982 S.W.2d at 853.

9

[¶16]  We note that while we have never had the occasion to adopt the notice-prejudice rule before now, our precedent is consistent with such an approach.  In *Pacheco v. Continental Cas. Co.*, the insurer received notice of an accident three years after it occurred.  We concluded that the untimely notice violated the policy requirement that the insured give notice "within 20 days after the alleged accident . . . or as soon thereafter as was 'reasonably possible.'"  *Id.*, 476 P.2d at 168.  In reaching this conclusion, we considered the prejudice to the insurance company caused by this late notice:

> If a timely claim for accident benefits had been made, evidence pertaining to the happening of the accident and to the nature and extent of injuries, together with evidence of resulting complications, if any, could probably have been obtained at that time which cannot be obtained some three years later.

*Id*. at 168.  We remarked that "a beneficiary's demand must be made within a reasonable time for the insurer to investigate the claim, i.e., before its staleness poses a substantial obstacle to ascertaining the facts surrounding the occurrence."  *Id*. at 169.

[¶17]  In *Brown v. Life Insurance Company of North America*, 8 P.3d 333 (Wyo. 2000), we considered prejudice to the insurer in our determination of whether timely notice had been provided.  In the course of our discussion, we found the lack of prejudice to the insurer significant.  We stated that "based on the record before us, [the insurer] does not have a viable defense based on prejudice because of an inability to investigate the claim."  *Id*. at 337.

[¶18]  Consistent with this precedent and the public policy rationales discussed in the preceding paragraphs, we find that a two-step approach to an insurer's claim of late notice is appropriate.  This approach requires a preliminary determination that an insured's notice was untimely, in violation of the notice requirement contained in the insurance policy.  The question of the timeliness of the insured's delay in providing notice will depend upon a number of factors, including, but not limited to, the language of the notice requirement in the policy, the timing of the notice, the insured's knowledge of the underlying facts and ability to provide notice, the sophistication of the parties, the type of insurance at issue, and the reasonableness of any delay.  *See, e.g.*, *Northbrook Prop. & Cas. Ins. Co. v. Applied Sys., Inc.*, 729 N.E.2d 915, 922 (Ill. App. Ct. 2000).  Once it is determined that notice was untimely, a court should then turn to the question of whether the insurer was prejudiced by that delay.  If the insurer was prejudiced, then the insurer will be relieved of its obligation to provide coverage.

*The Century Policy*

[¶19] The Eighth Circuit's Order for Certification of Questions of State Law also requests this Court to answer the question of whether, under Wyoming law, an insurance clause is enforceable where it excludes coverage unless the insured notifies the insurer "as soon as practicable . . . whether [the insurer] [is] prejudiced or not." Century argues that this language is enforceable, regardless of whether we adopt the notice-prejudice rule. Hipner contends that once the notice-prejudice rule is adopted, this language is void as against public policy.

[¶20] "Contracts against public policy are considered illegal and void. Consequently, the parties to an insurance contract are free to agree to coverage terms as they desire so long as the policy terms do not violate public policy." 7 Steven Plitt et al., *Couch on Insurance* § 101:11 (3d ed. updated June 2016). Public policy may affect coverage through statutes and regulations, as we recognized in *Allstate Insurance Company v. Wyoming Insurance Department*, 672 P.2d 810, 820-21 (Wyo. 1983), where we explained that a policy provision is void as against public policy if it is contrary to statute. *See also* 7 Plitt, *supra*, § 101:12. Public policy may also affect coverage via the "jurisdiction's application of public policy to the construction of the insurance contract." 7 Plitt, *supra*, § 101:12. The types of public policy concerns that may require or exclude coverage are "arguably unlimited" but include the prevention of "illusory coverage when the insured purchases ineffective insurance protection" and the compensation of injuries to innocent third parties. 7 Plitt, *supra*, §§ 101:18, 101:20.

[¶21] Only two courts have considered policy language intending to override the notice-prejudice rule. In *Steadfast Insurance Company v. Casden Properties, Inc.*, 837 N.Y.S.2d 116, 117 (N.Y. App. Div. 1st Dep't 2007), the court applied California law and held that because California had adopted the notice-prejudice rule, an endorsement that waived the prejudice requirement for untimely notice was void as against public policy. Similarly, in *Service Management Systems, Inc. v. Steadfast Insurance Company*, 216 Fed. Appx. 662 (9th Cir. 2007), the court considered whether a clause stating that the insurer "shall not be required to establish prejudice resulting from noncompliance" with the notice provision would render the notice-prejudice rule inapplicable in that case. *Id*. at 664. The court held such language was "insufficient to defeat California's strong public policy behind the notice-prejudice rule." *Id*.

[¶22] Likewise, in this instance, the notice-prejudice rule is supported by sound public policy, as discussed above, *see supra* ¶¶ 9-15. Century cannot circumvent that rule by simply adding language to its policy stating that insufficient notice "will result in exclusion of coverage whether [Century is] prejudiced or not." We therefore hold that this language is void as against public policy.

11

## CONCLUSION

[¶23] We hereby adopt the notice-prejudice rule. Before being entitled to deny coverage based upon untimely notice of an occurrence that triggers coverage, an insurer must be prejudiced, regardless of the express language of the policy.